THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

YESSICA ORTIZ as Next Friend of    :
Minors STEPHANIE LINETTE           :
BALDERAS and JAVIER ESTEBAN        :
BALDERAS, JR.,                      :
                                    :         Civil Action
         Plaintiff,                 :         No. 3:11-CV-033(CAR)
                                    :
v.                                  :
                                    :
DAVID RALPH WIWI; ROLAR, INC.;     :
and GREAT WEST CASUALTY CO.,        :
                                    :
         Defendants.                :
_____

ORDER ON DEFENDANTS' MOTIONS TO EXCLUDE
CERTAIN OPINIONS OFFERED BY PLAINTIFF'S EXPERTS
REGINALD HINES, JR. AND J.C. POINDEXTER, Ph.D.

Currently before the Court in this wrongful death action are Defendants' Motions
to Exclude Plaintiff's Experts Reginald Hines, Jr. and J.C. Poindexter, Ph.D. [Docs. 43 &
46].   Plaintiff retained Mr. Hines, a purported expert on the compliance requirements of
the Federal Motor Carrier Safety Regulations, to offer his opinion as to whether violations
of the Federal Motor Carrier Safety Act were factors in this case.   Plaintiff retained Dr.
Poindexter, a forensic economist, to give opinions as to the full economic value of
Plaintiff's decedent's life.   For the following reasons, Defendants' Motion to Exclude

1

Reginald Hines, Jr. [Doc. 43] is **GRANTED**, and their Motion to Exclude J.C. Poindexter, Ph.D., [Doc. 46] is **DENIED**.

## BACKGROUND

On February 28, 2009, at approximately 4 a.m., Plaintiff's decedent, Javier Esteban Balderas, Sr. ("Decedent") was driving a 1999 Ford Explorer (the "SUV") westbound on Interstate 20, through heavy rain, in Morgan County, Georgia.   At that time, Defendant Wiwi was driving a tractor-trailer on I-20 West.   Tragically, the tractor-trailer and the SUV collided, resulting in the deaths of Decedent and two of the three passengers in the SUV. It is undisputed that Defendant Wiwi was driving in furtherance of Defendant Rolar's commercial trucking business.

At the time of his death, Decedent was 22.54 years old and had been working as a roofer for a roofing company in Wade, North Carolina.   Decedent was the father of three small children.

## ANALYSIS

Defendants seek to have the Court exclude Mr. Hines's and Dr. Poindexter's opinions under Rule 702 of the Federal Rules of Evidence.

### I.     Standard of Review under Rule 702

The admission of expert testimony is guided in federal court by the Federal Rules of Evidence Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[1]

Thus, simply stated, expert testimony is admissible only upon a finding that the expert is qualified to testify competently regarding the matters he intends to address, that the methodology by which the expert reached his conclusions is sufficiently reliable, and that the expert's testimony will assist the trier of fact.[2]

Of course, "experts may be qualified in various ways."[3]  An expert's scientific training or education can provide one means by which an expert may qualify to give certain testimony; however, an expert's experience, knowledge, or skill in a particular field may also qualify that expert to offer an opinion.[4]  Because "experts come in various shapes and sizes[,] there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field."[5]  The district court, therefore,

---

[1] Fed. R. Evid. 702 (as amended effective Dec. 1, 2011).
[2] *See McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002).
[3] *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).
[4] *Id.* at 1260-61; *see* Rule 702(a).
[5] *Santos v. Posadas de Puerto Rico Assocs.,* 452 F.3d 59, 63 (1st Cir. 2006).

must focus its inquiry on whether the expert has the requisite knowledge, skill, experience, training, and education to offer the testimony he intends to introduce.[6]

As to reliability, trial courts must assess "whether the reasoning or methodology underlying the testimony is . . . valid and whether that reasoning or methodology properly can be applied to the facts in issue."[7]   This inquiry must focus "solely on the principles and methodology [of the expert], not on the conclusions that they generate."[8]

In conducting this inquiry, the district court can consider many factors.   In *Daubert,* the Supreme Court suggested that, when evaluating the reliability of an expert's scientific testimony, a district court can consider the (1) testability; (2) error rate; (3) methodology; (4) peer review and publication; and (5) general acceptance of an expert's opinion.[9] In the context of non-scientific testimony, however, the Advisory Committee Notes for Rule 702 suggest that courts consider factors such as:

(1) Whether the [expert is] proposing to testify about matters growing naturally and directly out of research [he has] conducted independent of the litigation, or whether [he has] developed [his] opinion expressly for purposes of testifying;

(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

---

[6] Fed. R. Evid. 702.
[7] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993).
[8] *Id.* at 595.
[9] 509 U.S. at 593-95.

4

(3) Whether the expert has adequately accounted for obvious alternative explanations;

(4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.[10]

Expert testimony must also actually help the trier of fact to understand the facts in evidence or to determine a fact in issue.[11]   Expert testimony does so "if it concerns matters that are beyond the understanding of the average lay person."[12]   "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."[13]   Expert testimony also does not help the trier of fact if it fails to "fit" with the facts of the case.[14]   This occurs when "a large analytical leap must be made between the facts and the opinion."[15]   The court may also exclude otherwise reliable testimony if it does not have "sufficient bearing on the issue at hand."[16]

---

[10]  Fed. R. Evid. 702, advisory committee's note (2000 amends.) (citations and internal quotations omitted).
[11]  Fed. R. Evid. 702(a).
[12]  *Frazier,* 387 F.3d at 1262.
[13]  *Id.* at 1262-63.
[14]  *McDowell v. Brown,* 392 F.3d 1283, 1299 (11th Cir. 2004).
[15]  *Id.*
[16]  *Bitler v. A.O. Smith Corp.,* 391 F.3d 1114, 1121 (10th Cir. 2004).

Ultimately, Rule 702 imposes a duty on trial courts to act as "gatekeepers" to ensure that speculative, unreliable, and irrelevant opinions do not reach the jury.[17]   At the same time, however, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate fact-finder.   A district court's "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury."[18]   "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[19]   The court's duty is thus limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence."[20]

With the above legal standards in mind, and the Court will address the challenged opinions of Mr. Hines and Dr. Poindexter below.

## II.   Opinions Offered by Reginald Hines, Jr.

According to his Expert Report, Reginald Hines, Jr. provides "guidance to attorneys in reference to the compliance requirements of the Federal Motor Carrier Safety Regulations ("FMCSR") and provide[s] expert testimony in court cases involving crashes of

---

[17] *See Daubert*, 509 U.S. at 589 n.7; *McCorvey*, 298 F.3d at 1256; *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005).

[18] *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999).

[19] *Daubert*, 509 U.S. at 596.

[20] *Frazier*, 387 F.3d at 1272.

Commercial Motor Vehicles."[21]   Mr. Hines has over 20 years of experience enforcing the FMCSR as an officer in the Enforcement Division of North Carolina Division of Motor Vehicles.

In retaining Mr. Hines, Plaintiff asked that he review the facts and circumstances of the present case and opine whether violations of the rules governing motor vehicle safety were factors in this case. Mr. Hines has thus offered the following opinions:

> **Opinion 1:** "Rolar Inc., their tractor trailer and their driver were subject to the [FMCSR] at the time of the crash on February 28, 2009."

> **Opinion 2:**   "Wiwi was a disqualified driver at the time of the crash and was in violation of the [FMCSR] and North Carolina Motor Vehicle Laws."

> **Opinion 3:**   "Rolar Inc. was supposed to maintain Safety Management Systems that are required by the [FMCSR].   Those Safety Management Systems were either deficient or 'nonexistent' at the time of the crash on February 28, 2009.   'Lack of a safety management system permitted the dispatch of a driver, namely David Wiwi, that was disqualified from operating a commercial motor vehicle.   Had Mr. Wiwi not been on the road, the February 28, 2009 collision would not have occurred.'"[22]

At Mr. Hines's deposition, Plaintiff's counsel produced a supplemental report in which he offered the following updated opinions:

---

[21]  Hines Depo., Ex. 2, Doc. 61-3.
[22]  *Id.*, Ex. 1, Doc. 61-1.

**Opinion 4:**   Wiwi was Rolar's employee at the time of the accident under the FMCSR;

**Opinion 5:**   Wiwi was not qualified to operate a commercial vehicle at the time of the accident or "in the months preceding" the accident;

**Opinion 6:** Certain "required documentation" was missing from Wiwi's driver qualification file " which would have revealed that Wiwi's CDL" was suspended at the time of the accident;

**Opinion 7:**   Wiwi "violat[ed] of the Federal hours-of-service rules and he . . . falsified his logs"; thus, his "work-rest history in the day and weeks preceding the crash . . . may very well have played a role" in this accident;

**Opinion 8:**   Rolar did not instruct Wiwi on the FMCSR governing driver's logs and hours of service;

**Opinion 9:**   Wiwi was fatigued at the time of the accident;

**Opinion 10:**   Wiwi knowingly violated the hours of service regulations; and

**Opinion 11:**   Rolar knew Wiwi violated the hours of service regulations and dispatched him in violation of the FMCSR.[23]

During his deposition, Mr. Hines also offered the following three opinions not listed in either of his reports:

**Opinion 12**: Rolar's owner and corporate representative, Larry Middleswart, is not a credible witness;

---

[23] *Id.*, Ex. 3, Doc. 61-3.

> **Opinion 13**: a truck driver has a higher standard of care than a passenger car driver; and

> **Opinion 14:** Wiwi is not a credible witness.

In their Motion, Defendants argue all of Mr. Hines's 14 opinions should be excluded.

Plaintiff does not contest any of Defendants' arguments.   In a telephone call with the Court's Courtroom Deputy, Plaintiff's counsel conceded that the above-referenced 14 opinions should be excluded.   Thus, this Court finds any further discussion on the admissibility of these opinions is unnecessary.   Mr. Hines's opinions 1 – 14 as enumerated above, are hereby excluded, and Defendants' Motion to Exclude the Opinions of Reginald Hines, Jr. is **GRANTED**.

## III.    Opinions Offered by J.C. Poindexter, Ph.D.

According to his Expert Report, J.C. Poindexter has a Doctor of Philosophy degree in Economics and was a professor at North Carolina State University ("NC State") where he taught economics and finance courses for more than 40 years.[24]   He retired from NC State at the end of 2009 and retains emeritus faculty status.   As evidenced in his curriculum vitae ("CV"), Dr. Poindexter has specialized in the areas of macroeconomics,

---

[24]  Poindexter Depo., Ex. 2, Doc. 49.

money and financial markets, managerial finance, and legal economics.[25]   Dr. Poindexter has received many awards for his contributions to his areas of expertise in economics; presented numerous seminars and papers in these areas; and published numerous academic articles, textbooks, and academic reference books in the field of economics.[26] For more than 30 years, Dr. Poindexter has "regularly applied [his] knowledge of economics in evaluating losses in death and injury cases."[27]

To assist Dr. Poindexter in forming his opinions as to the full economic value of Decedent's life, Plaintiff's counsel provided him with basic information about Decedent's occupation and background available at that time.   Specifically, Plaintiff's counsel provided the following information: (1) Decedent was regularly employed by a roofing company in Wade, North Carolina, where he worked 40 hours per week at a pay rate of $10 per hour; (2) Decedent was the father of three children who lived in a home he maintained in North Carolina, along with the mother of his children; and (3) Decedent was born on August 15, 1986, and died on February 28, 2009, at an attained age of 22.54 years, that age corresponding to a U.S. Vital Statistics life expectancy of some 54.3 years. Based on this information, Dr. Poindexter offered the following two opinions:

––––––––––––––––––––––––––

[25]  *Id.,* Ex. 1, Doc. 49.
[26]  *Id.*
[27]  *Id.,* Ex. 2, Doc. 49.

**Opinion 1:** "The present monetary value of [Decedent's] projected lost earnings totals $671,745."

**Opinion 2:**   "The . . . current cost of [Decedent's] lost services [in the home] is $5,000 yearly."[28]

Defendants do not dispute that Dr. Poindexter is qualified as a forensic economist to give expert opinions on the projected present value of Decedent's lost future earnings and loss of services in the home.   Instead, Defendants contend his opinions are unreliable because the underlying information Dr. Poindexter relied on fails to support his opinions.   Specifically, Defendants argue that in determining the present value of Decedent's projected lost earnings, Dr. Poindexter failed to consider Decedent's "sporadic" work history or his previous tax records.   Likewise, in determining the present value of Decedent's lost services in the home, Defendants contend Dr. Poindexter failed to consider Decedent's actual contributions (or lack thereof).   The Court finds Defendants' arguments unpersuasive.

Dr. Poindexter's opinions are reliable.   Indeed, these opinions are the types of opinions that forensic economists commonly give. In reaching his conclusions, Dr. Poindexter employed the tools and training that a forensic economist uses, and his factual conclusions logically arise from the information he reviewed.   His opinions are very

---

[28] *Id.*, Ex. 2.

conservative, as his projections are based on Decedent making a maximum $10 an hour, no matter the job.   Indeed, Dr. Poindexter's calculations do not account for Decedent receiving any promotions, seniority advances, or any other escalations throughout his life. [29]    Opposing counsel vigorously cross-examined Dr. Poindexter about his conclusions, and Dr. Poindexter clearly explained why he reached conclusions contrary to those explanations posed by Defendants' counsel.[30]

Additionally, Dr. Poindexter is, undisputedly, an expert in forensic economics, and the method used to determine the projected monetary value of Decedent's life is likely "beyond the understanding of the average lay person." [31] At the very least, Dr. Poindexter's testimony may assist the jurors in calculating any such amount. The jury can then consider Decedent's personal circumstances when deciding what, if anything, to award Plaintiff, as it is explained by the Court in a jury charge.   Indeed, Dr. Poindexter's report in no way serves as evidence that Plaintiff <u>actually</u> lost the projected amount of lost earnings and home services.   To establish that Dr. Poindexter's report carries any weight, Plaintiff must establish a loss of earning capacity and home services consistent with that

_____

[29] *Id.*, pp. 41-42.

[30] *See e.g.*, Poindexter Dep., p. 34, 35 Doc. 49 (opinions not affected by whether Decedent was married or number of children); p. 41 (opinions based on any job qualifying Decedent to earn $10 an hour, not on roofing); p. 43-51 (explanation of why tax records are not a definitive measure of income and are not the best predictor of future lost wages).

[31] *Frazier*, 387 F.3d at 1262.

relied upon by Dr. Poindexter.   To the extent Plaintiff is able to do so, Dr. Poindexter's report merely provides the basic calculations necessary to provide the present value of Decedent's loss future earnings and home services.

If, as Defendants contend, Dr. Poindexter has based his opinions on overstated facts, provided by a biased source, i.e. Plaintiff's counsel, this may certainly be brought to the jury's attention through cross-examination. However, these potential weaknesses in his testimony only go to the weight of the opinions -- not their admissibility -- and are thus not grounds for exclusion[32] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" is the more appropriate means of attacking this testimony.[33]   Any such weaknesses do not render Dr. Poindexter's opinions unreliable.[34]

---

[32] *Daubert*, 509 U.S. at 596; Fed. R. Evid. 703 ("[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed") (emphasis added); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *see also Primrose Operating Co. v. Nat'l Amer. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (fact that expert did not personally review all the records at issue and provided only general descriptions may have weakened his testimony but did not require that his opinions be excluded); *Sheet Metal Workers Int'l Assoc. Local Union No. 6 v. Todd-Ford Mgmt. Co.*, No. SA-03-CA-290-XR, 2005 WL 5977617, at *2 (W.D. Rex. July 12, 2005)..

[33] *Daubert*, 509 U.S. at 596.

[34] *See Id.* at 596.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude the Opinions of Reginald Hines, Jr. [Doc. 43] is **GRANTED**, and Defendants' Motion to Exclude the Opinions of J.C. Poindexter, Ph.D., [Doc. 46] is **DENIED**.

SO ORDERED this 26th day of September 2012.

S/   C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

SSH/lmh

14